# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | Bankruptcy Case No. 23-20371-GLT |
| | : | |
| JAISON KELLY, | : | Chapter 13 |
| | : | |
| Debtor. | : | |
| | : | |
| JAISON KELLY, | : | |
| Movant, | : | |
| | : | |
| v. | : | Related to Document No. 122 |
| | : | Document No. |
| RONDA J. WINNECOUR, | : | |
| | : | |
| Respondent. | : | |
| | : | |

## RESPONSE AND OBJECTION TO
## DEBTOR'S MOTION TO DISMISS CHAPTER 13 CASE

The Commonwealth of Pennsylvania, by Attorney General Michelle A. Henry ("Commonwealth"), hereby files this Response and Objection to Debtor/Defendant Jaison Kelly's ("Debtor" or "Defendant") Motion to Dismiss Chapter 13 Case ("Motion") and in support thereof represents as follows:

### REQUEST FOR RELIEF

1. The Commonwealth objects to Debtor's Motion to the extent Debtor moves to dismiss the above-captioned bankruptcy case without prejudice. As set forth more fully below, the Commonwealth believes cause exists under 11 U.S.C. § 349(a) to dismiss this case ***with prejudice*** thereby (1) barring any future discharge of the debts in the present bankruptcy case, and/or (2) barring the Debtor's ability to file a subsequent petition.

**COMMONWEALTH'S INTERESTS AS *PARENS PATRIAE* IN THIS PROCEEDING**

2. On July 21, 2022, prior to the commencement of the above-captioned bankruptcy matter, the Commonwealth commenced a public enforcement action against Debtor and his dealership business, WPK Holdings Co. d/b/a JK Motor Cars LLC a/d/b/a JK Motor Cars a/d/b/a RP Sells Cars ("dealership business"), in the Court of Common Pleas of Allegheny County, Pennsylvania, at Civil Docket No. GD-22-009111 ("State Court Action").

3. As more fully set forth in the Commonwealth's Complaint in the State Court Action,[1] the Commonwealth's State Court Action alleges that Debtor and his dealership business have violated the Pennsylvania *Unfair Trade Practices and Consumer Protection Law*, 73 P.S. § 201-1, *et seq.* ("Consumer Protection Law"), and the Pennsylvania *Automotive Industry Trade Practices* regulations, 37 Pa. Code § 301.1, *et seq.*, while engaging in trade and commerce within the Commonwealth of Pennsylvania by advertising, marketing, offering for sale, and selling used motor vehicles to consumers.

4. Following commencement of the Commonwealth's State Court Action, on August 18, 2022, Debtor and his dealership business were properly served by sheriff with copies of the Commonwealth's Complaint. Thereafter, Debtor and his dealership business, through their counsel of record, Joseph F. Butcher, Esq., of Zimmer Kunz, PLLC, filed an Answer in the State Court Action and the parties further engaged in discovery.

---

[1] The Commonwealth's Complaint in the State Court Action and a summary of pertinent averments relating to Debtor's alleged unlawful acts and practices relevant to the above-captioned Bankruptcy Case are provided in the Commonwealth's proof of claim at Docket No. 60-1, and are incorporated by reference as if fully set forth herein.

5. On February 21, 2023, the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania at Bankruptcy Case No. 23-20371-GLT ("Bankruptcy Case").

6. Since the petition date, at least 25 consumers have filed individual proofs of claim against the Debtor in connection with the conduct set forth in the Commonwealth's State Court Action ("consumer-creditors").

7. The Commonwealth calculates that the above-mentioned consumer-creditors filed individual proofs of claim that seek an aggregate total of $189,326.49 in restitution from Debtor, and of that amount further include $33,779.48 in priority claims.

8. The Debtor's schedules fail to include all but one of the consumer-creditors.

9. In addition to those consumers' individual proofs of claim, on August 21, 2023, the Commonwealth filed a government proof of claim against Debtor at Claim No. 60-1 for a total amount of $163,631.25, consisting of $72,631.25 in (non-duplicative restitution) and $91,000.00 in civil penalties under the Consumer Protection Law. In the proof of claim, the Commonwealth further stated a portion of the claims constitute a priority claim in the total amount of $14,400.00. [Claim No. 60-1.]

10. On August 30, 2023, the Commonwealth, as *parens patriae*, filed an adversary complaint against the Debtor for a determination that certain debts related to the consumer claims and the claim of the Commonwealth were excepted from discharge. *See* Adversary Case No. 23-02077-GLT at Dkt. No. 1.

11. More specifically, the Commonwealth's adversary complaint seeks a court determination that thirty Pennsylvania consumers' claims totaling $171,511.76 in non-

duplicative restitution, and civil penalties totaling $37,000.00, should be declared non-dischargeable based on Debtor's (i) alleged sale of non-roadworthy vehicles under false pretenses and (ii) alleged fraudulent sale of vehicles even though Debtor was not able to transfer title to the purchasers.

12. On February 14, 2024, a Status Conference was held on the Commonwealth's Adversary Case. In light of the Commonwealth expressing its frustration in attempting to obtain Rule 26 disclosures from the Debtor, following the Status Conference, the Court issued an *Order to Show Cause* why Debtor should not be sanctioned for defaulting on his obligation to provide the Commonwealth with a timely Rule 26 initial disclosure as ordered by the Court.

13. On February 16, 2024, at Docket No. 122, the Debtor then filed a Motion to Dismiss his Bankruptcy Case pursuant to 11 U.S.C. § 1307(b) ("Motion to Dismiss").

**DEBTOR'S LACK OF GOOD FAITH THROUGHOUT THE BANKRUPTCY CASE**

14. On April 4, 2023, Debtor filed his chapter 13 plan at Docket No. 37. An amended chapter 13 plan was filed on May 26, 2023, at Docket No. 60. The Debtor's plan does not provide specific treatment for the consumer-creditors and proposes to pay sixty percent (60%) to all general unsecured creditors.

15. On May 1, 2023, the Meeting of Creditors pursuant to 11 U.S.C. § 341 was held and was thereafter continued to and concluded on May 11, 2023 (jointly, the "341 Meeting").

16. During the 341 Meeting, the Debtor made the following statements under oath:

   a. When Debtor was asked his reason for filing bankruptcy, he cited to the State Court Action and related consumer complaints;

   b. Debtor confirmed his dealership business had closed pre-petition;

4

c. Debtor stated he had no remaining vehicles of the dealership business in his possession;

d. Debtor stated the only assets remaining of the dealership business were various items of furniture with little to no liquidation value;

e. Debtor confirmed he had three operating businesses, and did not anticipate any income from any other source within the next six months;

f. Debtor confirmed the only three businesses he owned which were still operating were (1) "In the Details" (car detailing business), (2) "Kellys Brunos" (pizza shop), and (3) "J Exotic pet parties;" and

g. Debtor stated he had not sold or given away any property in the year before filing.

17. However, prior to the 341 Meeting, the Commonwealth became aware that the Debtor may have additional assets that were not disclosed on the Debtor's schedules or otherwise identified by Debtor at the beginning of the 341 Meeting. These assets included vehicles, car parts, and other business and personal assets that were actively listed for sale on Debtor's Facebook Marketplace page. True and correct screenshots of these listings as of May 8, 2023 are attached hereto and incorporate herein as "Exhibit A."

18. When questioned further at the 341 Meeting about his assets, the Debtor stated the following:

a. Question: "So is it your testimony that there are no assets of JK Motors at the present time?"

b. Answer: "Correct I have nothing – I mean I have none of the locations I have none of the vehicles – nothing."

…

c. Question: "Your schedules list a couple of vehicles: a 2013 Maserati GT, a 2019 Indian Motorcycle – other than those two vehicles is your name on the title to any other motor vehicles?"

d. Answer: "There's a Lincoln Navigator."

e. Question: "What year?"

f. Answer: "2018"

…

g. Question: "Are there any other motor vehicles besides the 2018 Lincoln?"

h. Answer: "No."

19. However, Debtor's Facebook also indicated Debtor was in possession of a Tesla. Debtor was questioned about the Tesla at the 341 Meeting:

a. Question: "Have you owned a Tesla in the last six months?"

b. Answer: "Company did."

c. Question: "Which company owned the Tesla?"

d. Answer: "WPK. Well I mean, they didn't own it, they lease it."

20. At the continued 341 Meeting held on May 11, 2023, the Commonwealth again inquired into the Tesla. Debtor admitted to still possessing the Tesla and utilizing the vehicle for personal use and in conducting his new business.

21. Upon further inquiry at the 341 Meeting, Debtor further admitted to owning an undisclosed Artic ATV.

22. In addition, following the 341 Meeting, a Motion for Relief from the Automatic Stay was filed at Docket No. 73 ("Motion for Relief") on June 22, 2023, requesting relief to sell the contents of a storage unit in Debtor's name. The storage unit contained yet another vehicle that was not identified in Debtor's schedules – a 1968 Ford Mustang titled to Debtor and Tammy L. Kelly (his mother). When questioned about this additional vehicle on the record during the hearing on the Motion for Relief, Debtor's counsel stated that Debtor believed the vehicle was titled in his mother's name.

23. The Commonwealth has also obtained information from the Pennsylvania Department of Transportation indicating that the Debtor or his former dealership business owned or possessed the following additional vehicles during the pendency of this Bankruptcy Case:

    a. 2021 Tesla Model Y – owned by "WPK Holdings Co" (Debtor's dealership business); and

    b. 2022 Toyota Tundra – leased to "WPK Holdings Co" (Debtor's dealership business).

24. Further, the Commonwealth has obtained information that Debtor currently owns or possesses a 2023 Tesla Model X, which is leased to "Kellys Brunos, LLC" (Debtor's restaurant business) and was obtained by the Debtor in June of 2023.

25. Nevertheless, Debtor's schedules were never amended to include the 2018 Lincoln Navigator, the 1968 Ford Mustang, the Artic ATV, or the other vehicles identified above.

26. During the 341 Meeting, Debtor further admitted that Debtor owned several exotic pets that he utilized in his "J Exotic Pets" business (sole proprietorship) that were worth potentially hundreds of dollars each. Debtor also admitted that he currently possessed and was using in his "In the Details" business (sole proprietorship) certain vehicle-detailing equipment that he valued at a few thousand dollars. Debtor also admitted that his "Kellys Brunos" pizza business likewise possessed business equipment such as pizza ovens that all had material value.

27. However, Debtor's Schedules list the value of each of Debtor's aforementioned businesses at $0.00. Debtor's Schedules also fail to identify the ownership and value of the assets used in those businesses. [Dkt. No. 36, Schedule A/B, ¶19.] While the business assets were not identified on Debtor's Schedules, Debtor admitted at the 341 Meeting that he had listed assets of his businesses for sale – such as three laptops, printers, and other business equipment.

28. Accordingly, based in part on the above, on June 16, 2023, at Docket No. 70, the Commonwealth filed an Objection to Confirmation of Debtor's Amended Plan ("Objection"). The Commonwealth objected to confirmation based on Debtor's alleged failure to propose a plan in good faith as required by 11 U.S.C. § 1325(a)(3). The Objection raised concerns about the retention of high value assets including a Maserati GT, Indian Motorcycle, Lincoln Navigator, several exotic pets, and a personal residence that Debtor valued at over $580,000.00 while failing to provide a meaningful distribution to consumer-creditors.

29. Subsequent to the Commonwealth filing its Objection to Debtor's proposed plan, the Commonwealth also became aware that Debtor was the owner and general manager of the "Pittsburgh River Monsters Hockey Club" ("Hockey Team"). A true and correct screenshot of the Hockey Team's website is attached hereto and incorporate herein as "Exhibit B."

30. During the conciliation conferences, counsel for the Commonwealth asked questions regarding the Debtor's income from the Hockey Team. Debtor's counsel stated he would follow-up with more information.

31. On January 18, 2024, Debtor's counsel forwarded December monthly operating reports ("MORs") for three of Debtor's businesses to the Chapter 13 Trustee's office and to the Commonwealth. The MORs reflected net income for all three business in the total amount of $17,623.00. No MOR for the Hockey Team was provided.

32. On January 23, 2024, the Commonwealth sent Debtor's counsel an email stating that the Commonwealth had not received Debtor's MOR for his (unscheduled) Hockey Team. Further noting that Debtor is listed as the Hockey Team's owner, the Commonwealth also requested proof of ownership for the Hockey Team and an MOR for the same.

33. Also on January 23, 2024, the Commonwealth issued written discovery to the Debtor in connection with the Commonwealth's Objection to Plan Confirmation. The discovery requests asked for, among other things, an explanation regarding the ownership of the vehicles, and monthly operating reports for each of the Debtor's businesses, including the Hockey Team. A true and correct copy of the Commonwealth's First Set of Interrogatories and Requests for Production is attached hereto and incorporated herein as "Exhibit C."

34. Responses to the Commonwealth's written discovery regarding the Commonwealth's plan objection were due on February 22, 2024. To date, no response has been received.

35. On January 29, 2024, Debtor's counsel responded via email to the Commonwealth representing that Debtor had indicated he was not currently receiving any kind

of remuneration from the Hockey League, but hoped to receive an income from the venture in the future.

36. However, according to the Hockey Team's website, as the team's owner, Debtor "will receive 50% of team profits if handling Marketing and 35% and $500 per sponsorship if handling the Sales"; and as the GM of the team, Mr. Kelly is "compensated 25% of all team profits during the season." *See*: https://www.unionhockeyleague.com/rules.

37. Also, contrary to the above representations made by Debtor's counsel, it is further the Commonwealth's understanding that Debtor's Hockey Team has collected substantial remuneration through the following sources: (1) team sponsor payments this year; (2) player fees; (3) as of now, nine games' worth of ticket sales this year; (4) try out fees; (5) merchandise sales; and (6) fundraising proceeds.

**ARGUMENT**

38. Section 349(a) of the Bankruptcy Code states: "Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title." 11 U.S.C. § 349(a).

39. However, where "cause" exists, the Court may enter an order either (1) barring discharge of the debts in the dismissed case, and/or (2) barring the debtor from refiling a subsequent petition. *See In re Thompson*, 557 B.R. 856, 857 (Bankr. W.D. Pa. 2016) (citing 11 U.S.C. 349(a)) (dismissal of a case for cause bars the discharge of debts that can be discharged); *see also In re Mitchell-Fields*, No. 23-20721-GLT, 2023 WL 6396022, at *1 (Bankr. W.D. Pa.

Sept. 29, 2023) (Taddonio, J.) ("Section 349(a) of the Bankruptcy Code permits the Court to dismiss a case with prejudice to the filing of a subsequent petition.") (footnotes and citations omitted); *see also In re Stone Fox Cap. LLC*, 572 B.R. 582, 591 (Bankr. W.D. Pa. 2017) ("Although dismissals are typically without prejudice, dismissal with prejudice can be ordered when cause exists. *See* 11 U.S.C. § 349(a).") (Böhm, J.).

40. This Court has further held that "A lack of good faith is sufficient cause for a dismissal with prejudice." *In re Mitchell-Fields*, 2023 WL 6396022, at *1 (Bankr. W.D. Pa. Sept. 29, 2023) (citations omitted); *see also In re Stone Fox Cap. LLC*, 572 B.R. at 591 ("Here, where good faith is lacking, sufficient cause exists for dismissal with prejudice").

41. In *In re Mitchell-Fields*, quoting the United States Court of Appeals for the Third Circuit, this Court has further instructed that "the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances." *In re Mitchell-Fields*, 2023 WL 6396022, at *1 (quoting *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996)). Factors that may inform the inquiry into a chapter 13 debtor's good faith include: (1) nature of the debt; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *In re Reppert*, 643 B.R. at 845 (citing *In re Lilley*, 91 F.3d at 496).

42. In *In re Reppert*, this Court further held that that "concealment of an asset is typically viewed as indicative of bad faith." 643 B.R. at 846. Finding that the Debtor had failed to disclose a vehicle with an unencumbered fair market value of at least $36,000, this Court in *In*

11

*re Reppert* dismissed the debtor's bankruptcy case with a bar to refiling for two year. *Id*.

43. For similar reasons to those in *In re Reppert*, a review of the above-listed factors all support a determination by the Court that there is sufficient cause to dismiss this Bankruptcy Case with prejudice.

44. Regarding the 1st and 3rd factors – nature of the debt and how the debt arose – as set forth above and more fully in the Commonwealth's previous filings in this Bankruptcy Case, hundreds of thousands of dollars of claims against the Debtor are the result of his (i) alleged sale of non-roadworthy vehicles under false pretenses and (ii) alleged fraudulent sale of vehicles even though Debtor was not able to transfer title to the purchasers.

45. Regarding the 2nd and 4th factors – the timing of the petition and debtor's motive in filing the petition – Debtor further admitted at the 341 Meeting that he filed the instant Bankruptcy Case in response to the Commonwealth's State Court Action and mounting restitution claims by consumer-creditors. Debtor also filed the instant bankruptcy proceeding only months after the commencement of the State Court Action and when discovery related thereto was still in its infancy.

46. The 5th factor and 6th factors – how the debtor's actions affected creditors and debtor's treatment of creditors both before and after the petition was filed – also strongly weigh in favor of dismissal of the Bankruptcy Case with prejudice. Again, Debtor is alleged to have unlawfully sold consumer-creditors non-roadworthy vehicles and vehicles that he was not able to transfer title for. In addition to personally participating in the unlawful acts and practices alleged, Debtor did not reimburse any of the identified consumer-creditors prior to the commencement of the Bankruptcy Case. By virtue of filing the Bankruptcy Case, the identified consumer-creditors

have been dragged along by Debtor for approximately a year with potentially no progress gained. All the while, Debtor has been observed incurring unnecessary expenses for vehicle payments, vacations, multiple business ventures, etc. in the interim as he has simultaneously accrued over $28,000.00 in arrears under the chapter 13 plan. Such arrears may also be in part due to Debtor's failure to disclose income to the Bankruptcy Court and the Chapter 13 Trustee, including income from his Hockey Team and his sale of personal and business assets.

47. The 7th factor – whether the debtor has been forthcoming with the bankruptcy court and the creditors – also strongly weighs in favor of dismissal with prejudice. Even more egregious than the facts of *In re Reppert*, here, Debtor's schedules failed to disclose numerous vehicles and Debtor further concealed the value of other assets such as exotic pets and vehicle-related equipment, as well as his ownership of the Hockey Team and any income related thereto. Debtor also failed to respond to reasonable discovery related to these issues. And, on information and belief, the Debtor may have also sold other business assets on Facebook Marketplace without Court approval post-petition.[2] Moreover, now, after receiving pressure from the Commonwealth to participate in the Bankruptcy Case and related Adversary Case, the Debtor is requesting dismissal of his case without accounting for all assets and income.

48. The Debtor has been given multiple opportunities to participate in this Bankruptcy Case in good faith, but has failed to do so. Despite the Commonwealth's repeated

---

[2] The value of the undisclosed vehicles and other assets and income from his Hockey Team are unknown, as the Debtor has failed to produce any information regarding the same or respond to discovery requests issued by the Commonwealth.

13

attempts to obtain discovery or any information on the vehicles, assets, and Hockey Team, the Debtor has failed to provide a reasonable explanation.

      WHEREFORE, the Commonwealth of Pennsylvania, by Attorney General Michelle A. Henry, respectfully requests that this Honorable Court dismiss the Debtor's Bankruptcy Case with prejudice as to both dischargeability of the debts in this case and the ability of the Debtor to refile.


DATE: March 4, 2024                                              Respectfully submitted,

                                                                                                   MICHELLE A. HENRY
                                                                                                   ATTORNEY GENERAL


| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | BY: */s/ Lauren A. Michaels* |
| OFFICE OF ATTORNEY GENERAL | LAUREN A. MICHAELS |
| 1251 Waterfront Place | Deputy Attorney General |
| Mezzanine Level | PA Attorney No. 320686 |
| Pittsburgh, PA 15222 | |
| Tel: (412) 235-9072 | MELISSA L. VAN ECK |
| Fax: (717) 772-4526 | Chief Deputy Attorney General |
| E-mail: lmichaels@attorneygeneral.gov | Financial Enforcement Section |